**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EL TAPATIO GROCERS WHOLESALE, INC. and VITALI GROUP, INC., | ) | Case No. 16-cv-11163 |
| Plaintiffs, | ) | |
| v. | ) | |
| ENOVA NUTRACEUTICALS, INC., RUBEN DEL LA TORRE, JR., RUBEN DEL LA TORRE, SR., JAVIER RENDON and CARINA BUSTAMANTE, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs El Tapatio Grocers Wholesale, Inc. ("El Tapatio") and Vitali Group, Inc. ("Vitali") (El Tapatio and Vitali collectively referred to herein as "Plaintiffs") hereby bring the present action against Enova Nutraceuticals, Inc. ("Enova"), Ruben Del La Torre, Jr. ("Del La Torre, Jr.") and Ruben Del La Torre, Sr. ("Del La Torre, Sr."), Javier Rendon ("Rendon") and Carina Bustamante ("Bustamante") (Enova, Del La Torre, Jr. and Del La Torre, Sr., Rendon and Bustamante are collectively referred to herein as "Defendants") and allege as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); 28 U.S.C. § 1338(a), (b); 35 U.S.C. § 1 *et seq*.; and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the

federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court may properly exercise personal jurisdiction over Defendants since Defendants, and each of them, reside in and conduct business within the State of Illinois.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). All Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## NATURE OF THE ACTION

4. This is an action by Plaintiffs for trademark infringement, misappropriation of trade secrets and unfair competition under federal and Illinois law, and breach of fiduciary duties under Illinois law.

**The Parties**

5. Plaintiff, El Tapatio Grocers Wholesale, Inc. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 2021 W. 18th Street, Chicago, Illinois. El Tapatio distributes dietary supplements as well as groceries.

6. Plaintiff, Vitali Group, Inc. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 2021 W. 18th Street, Chicago, Illinois. Vitali manufactures dietary supplements.

7. Defendant, Enova Nutraceuticals, Inc. is a corporation organized under the laws of Illinois, having a registered agent in Evanston, Illinois, formerly having a place of business at 2135 City Gate Lane, Suite 300, Naperville, IL 60563, and is, or was at the time of the acts complained of herein, a manufacturer and/or marketer of dietary supplements.

8. On information and belief, Defendant, Ruben Del La Torre, Jr. resides at 2703 Showplace Drive, Apartment 211, Naperville, Illinois 60564. Del La Torre, Jr. is a former officer of Vitali and a current officer of Enova.

9. On information and belief, Defendant, Ruben Del La Torre, Sr. is a former resident of the State of Illinois and this Judicial District, and currently resides at 24132 NC Highway 73, Albermarle, North Carolina 28001. Del La Torre, Sr. is the father of Del La Torre, Jr. On information and belief, Del Torre, Sr. committed at least a portion of the tortious acts complained of herein in the State of Illinois and this Judicial District.

10. On information and belief, Defendant, Javier Rendon resides at 1814 S. 48th Ct., Cicero, Illinois 60804.

11. On information and belief, Defendant, Carina Bustamante resides at 1814 S. 48th Ct., Cicero, Illinois 60804, and is the spouse of Javier Rendon.

## **FACTS COMMON TO ALL COUNTS**

**Plaintiffs' Trademarks and Trade Secrets**

12. Since at least as early as January 2014, El Tapatio adopted and used the trademarks PIÑASLIM and Dancer Design:

in connection with a dietary fiber product in interstate commerce. Through El Tapatio's marketing, sales and use, the PIÑASLIM and Dancer Design trademarks have acquired secondary meaning. The PIÑASLIM and Dancer Design trademarks are distinctive and owned by El Tapatio.

13. El Tapatio is a market leader in wholesale grocery distribution, with focus on serving the Hispanic community. El Tapatio's PIÑASLIM dietary fiber product is available in grocery stores throughout the United States.

14. El Tapatio markets and sells its products primarily through its direct sales force. The sales cycle often begins with a sales lead generated through marketing efforts, customer referrals, and/or calls placed to prospective customers.

15. The market for El Tapatio's products is highly competitive. El Tapatio competes in the marketplace on the basis of freshness, quality, and price. There are dozens (if not hundreds) of other companies, each selling its own line of products, competing for the same customers and market share that El Tapatio services.

16. El Tapatio's success is dependent, in part, on its ability to protect its proprietary customer information (both current and prospective) and supplier information (the companies that supply El Tapatio's ingredients for its dietary supplements for its PIÑASLIM products, collectively, "El Tapatio's Trade Secrets"). El Tapatio relies on a combination of trademark and trade secret laws, as well as confidentiality agreements and sales arrangements, to establish and protect its proprietary rights.

17. The value of El Tapatio's Trade Secrets cannot be overstated. El Tapatio has spent many years and incurred substantial expense to both develop this proprietary information and safeguard it from competitors. In a highly competitive market, El Tapatio's Trade Secrets, such as names, contact information, and needs of current and prospective customers give El Tapatio a

continuing competitive advantage. The information is not generally known and would be extremely difficult, if not impossible, to duplicate.

18. In addition to the protective measures described above, El Tapatio's employees are required to execute confidentiality agreements by which they agree to protect El Tapatio's proprietary information, acknowledge that the information is the sole property of Plaintiff, and agree to return any such information upon termination of their employment with El Tapatio.

19. Plaintiff Vitali was formed in or about September, 2012. Vitali manufactures PIÑASLIM products for El Tapatio using the formula specified, ingredient suppliers identified, and labels provided by El Tapatio.

20. On or about December 11, 2009, Unico Industries, Inc. applied to register the mark NUMIA for weight management supplements, which application matured into U.S. Trademark Reg. No. 3,926,699 (the "NUMIA mark"). A true copy of U.S. Trademark Reg. No. 3,926,699 is attached hereto as Exhibit A.

21. On or about February 4, 2011, Unico Industries, Inc. applied to register the mark:



for weight management supplements, which application matured into U.S. Trademark Reg. No. 4,085,368 (the "Tape Measure Design mark"). The NUMIA and Tape Measure Design marks were subsequently assigned to Global Tower Import-Export Corp., Plainfield, Illinois. A true copy of U.S. Trademark Reg. No. 4,085,368 is attached hereto as Exhibit B.

22. On or about October 10, 2012, pursuant to an Asset Purchase Agreement, plaintiff Vitali acquired all of the assets of Global Tower Import-Export Corp. including the NUMIA and Tape Measure Design marks.

23. U.S. trademark registrations nos. 3,926,699 and 4,085,368 are valid, subsisting and owned by Vitali.

24. Pursuant to the October 10, 2012 Asset Purchase Agreement, Vitali also acquired from Unico Industries, among other things, confidential information related to the NUMIA product, including, but not limited to, trade secrets and information contained in or relating to product designs, manufacturing methods, processes, techniques, tooling, sales techniques, marketing plans and proposals, existing and potential customer lists and other customer information ("Vitali Trade Secrets").

25. Vitali has taken steps to protect the confidentiality of the Vitali Trade Secrets.

26. The Vitali Trade Secrets are not generally known and would be extremely difficult, if not impossible, to duplicate.

27. Plaintiffs El Tapatio and Vitali have not granted a license or any other form of permission to Defendants to use the NUMIA and Tape Measure Design marks or the El Tapatio and Vitali Trade Secrets.

**Defendant's Unlawful Conduct**

28. On information and belief, Defendant Del La Torre, Jr. was an owner and officer of Global Tower Import-Export Corp. and was an active participant in the negotiation and sale of the assets of Global Tower Import-Export Corp. including the NUMIA and Tape Measure Design marks and Trade Secrets to Plaintiff, Vitali. Following the sale, Del La Torre, Jr. became the Chief Operating Office of Vitali, a position held by Del La Torre, Jr. until about June, 2015. As Chief Operating Officer, Del La Torre, Jr. had a fiduciary duty and duty of loyalty to Vitali.

29. In or about June 2015, while he was an officer of Vitali, Del La Torre, Jr. initiated a scheme to misappropriate the business of Vitali, infringe the intellectual property rights of El Tapatio and Vitali, and divert the trade of El Tapatio and Vitali to himself.

30. On or about July 20, 2015, Del La Torre, Jr. formed Defendant Enova.

31. On August 26, 2015, Enova filed an application with the United States Trademark Office, Serial No. 86/737,336, to register PIÑASLIM as a trademark for dietary fiber to aid digestion claiming a date of first use as early as February 1, 2015.

32. Defendants Del La Torre, Jr. and Enova had actual knowledge that El Tapatio owns the PIÑASLIM mark and Enova falsely declared to the United States Trademark Office that it owns the PIÑASLIM mark and has the exclusive right to use the same in connection with dietary fiber to aid digestion goods.

33. Since about November, 2015 Defendant Enova has been and currently is engaged in the manufacture, sale, offering for sale, distribution, and advertising of dietary supplements using trademarks that are infringing and counterfeit reproductions of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design trademarks.

34. On information and belief Defendant Enova has without authorization misappropriated and used El Tapatio's Trade Secrets in manufacturing and selling infringing PIÑASLIM products.

35. On information and belief Defendant Enova has without authorization misappropriated and used Vitali's Trade Secrets in manufacturing and selling products under a counterfeit reproduction of the NUMIA trademark.

36. On information and belief Defendant Del La Torre, Jr. has directed, controlled, participated in, and has been the moving force behind the aforesaid acts of trademark infringement and trade secret misappropriation of Defendant Enova as alleged in paragraphs 28-35.

37. On information and belief Defendant Del La Torre, Sr. has personally purchased, distributed and sold Enova products using infringing and counterfeit reproductions of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design trademarks.

38. On information and belief Defendants Rendon and Bustamente have each purchased, distributed and sold Enova products using infringing and counterfeit reproductions of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design trademarks.

39. Defendants, and each of them, are involved in the sale, offering for sale, distribution, and advertising of dietary supplements using trademarks that are infringing and counterfeit reproductions of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design trademarks to the general public. Specifically, Defendants are using the marks PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design ("the Infringing Marks") on dietary supplements in interstate commerce which is likely to cause confusion, mistake and deception among consumers or potential consumers as to the source or origin of Defendants' goods and the sponsorship or endorsement of those goods by Plaintiffs.

40. On information and belief Defendants, and each of them, have had actual knowledge of Plaintiffs' PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design trademarks, and their infringement has been willful.

41. Defendants' unauthorized use of the NUMIA and Tape Measure Design trademarks that are identical with or substantially indistinguishable from Vitali's registered marks constitutes use of counterfeit trademarks.

## FIRST CLAIM FOR RELIEF

**Plaintiff El Tapatio vs. All Defendants**

**(False Designation of Origin 15 U.S.C. § 1125)**

42. Plaintiffs repeat and allege the allegations set forth in paragraphs 1 through 41 above, as if set forth fully herein.

43. El Tapatio owns the exclusive rights to the PIÑASLIM and Dancer Design trademarks. El Tapatio's use of the PIÑASLIM and Dancer Design marks predates that of Defendants.

44. Notwithstanding El Tapatio's prior common law rights in the PIÑASLIM and Dancer Design trademarks, Defendants have with actual knowledge used the PIÑASLIM and Dancer Design trademarks in conjunction with the sale and transportation of dietary fiber goods in interstate commerce.

45. Defendants' use of the PIÑASLIM and Dancer Design marks, without El Tapatio's authorization is likely to deceive and cause confusion, mistake and deception among consumers or potential consumers as to the source or origin of Defendants' goods and the sponsorship or endorsement of those goods by El Tapatio.

46. El Tapatio has not authorized, licensed or otherwise condoned or consented to Defendants' use of the PIÑASLIM or Dancer Design marks.

47. Despite the fact that Defendants have knowledge of El Tapatio's ownership and rights to the PIÑASLIM and Dancer Design marks, Defendants have used, and upon information and belief, will continue to use the marks in complete disregard of El Tapatio's rights.

48. Defendant Enova has misappropriated El Tapatio's PIÑASLIM trademark and has applied to register the mark with the U.S. Patent and Trademark Office, Serial No. 86/737,336,

falsely and fraudulently claiming to the owner of the mark. U.S. trademark application Serial No. 86/737,336 is invalid and void.

49. Defendants have misappropriated El Tapatio's substantial rights in and to the PIÑASLIM and Dancer Design marks and the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will permit Defendants to gain an unfair competitive advantage and enjoy the selling power of El Tapatio's PIÑASLIM and Dancer Design marks, allow Defendants to interfere with El Tapatio's continued promotion and expansion of the PIÑASLIM and Dancer Design marks, and allow Defendants to palm off their products as those being produced by, sponsored or authorized by El Tapatio.

50. The infringing acts of Defendants alleged above were committed willfully, and on information and belief, with full knowledge of El Tapatio's rights and with the intention of deceiving and misleading the public.

51. Defendants' infringing activities will continue to cause irreparable injury to El Tapatio if Defendants are not restrained by the Court from further violation of El Tapatio's rights. The dietary fiber product sold by Defendants under the infringing PIÑASLIM and Dancer Design marks is inferior to the genuine product, and as a result, the infringement is causing irreparable harm to the reputation and goodwill symbolized by El Tapatio's trademarks. As a direct and proximate result of Defendants' unlawful infringement, El Tapatio has suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial.

**WHEREFORE**, El Tapatio demands judgement against each of the Defendants for:

a) declaration that El Tapatio owns the PIÑASLIM and Dancer Design trademarks,

b) permanent injunctive relief pursuant to 15 USC § 1116 (a),

c) an award of Defendants' profits, damages sustained by El Tapatio, and the costs of action pursuant to 15 USC § 1117 (a),

d) prejudgment interest,

e) treble damages pursuant to 15 USC § 1117 (a),

f) a finding that this case is exceptional and an award of reasonable attorney fees pursuant to 15 USC § 1117 (a).

## SECOND CLAIM FOR RELIEF

**Plaintiff Vitali vs. All Defendants**

**(Trademark Infringement and False Designation of Origin 15 U.S.C. §§ 1114, 1125)**

52. Plaintiffs repeat and allege the allegations set forth in paragraphs 1 through 51 above, as if set forth fully herein.

53. Vitali owns the exclusive rights to the NUMIA and Tape Measure Design trademarks. Vitali's use of the NUMIA and Tape Measure Design marks predates that of Defendants.

54. Notwithstanding Vitali's prior common law and federally registered rights in the NUMIA and Tape Measure Design marks, Defendants have with actual knowledge used the NUMIA and Tape Measure Design marks in conjunction with the sale and transportation of weight management supplements goods in interstate commerce.

55. Defendants' use of the NUMIA and Tape Measure Design marks, without Vitali's authorization is likely to deceive and cause confusion, mistake and deception among consumers or potential consumers as to the source or origin of Defendants' goods and the sponsorship or endorsement of those goods by Vatili.

56. Vitali has not authorized, licensed or otherwise condoned or consented to Defendants' use of the NUMIA and Tape Measure Design marks.

57. Despite the fact that Defendants have knowledge of Vitali's ownership and rights to the NUMIA and Tape Measure Design marks, Defendants have used, and upon information and belief, will continue to use the marks in complete disregard of Vitali's rights.

58. Defendants have misappropriated Vitali's substantial rights in and to the NUMIA and Tape Measure Design marks and the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will permit Defendants to gain an unfair competitive advantage and enjoy the selling power of Vitali's NUMIA and Tape Measure Design marks, allow Defendants to interfere with Vitali's continued promotion and expansion of the NUMIA and Tape Measure Design marks, and allow Defendants to palm off their products as those being produced by, sponsored or authorized by Vitali.

59. The infringing acts of Defendants alleged above were committed willfully, and on information and belief, with full knowledge of Vitali's rights and with the intention of deceiving and misleading the public.

60. Defendants' infringing activities will continue to cause irreparable injury to Vitali if Defendants are not restrained by the Court from further violation of Vitali's rights. As a direct and proximate result of Defendants' unlawful infringement, Vitali has suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial. Vitali is entitled to all available relief provided for in 15 U.S.C. §1117, 1118 and 1125 including preliminary and permanent injunctive relief, damages, or in lieu thereof Defendants' profits, treble damages, costs and attorneys' fees.

**WHEREFORE**, Vitali demands judgement against each of the Defendants for

a) permanent injunctive relief pursuant to 15 USC § 1116 (a),

b) an award of Defendants' profits, and damages sustained by Vitali, and the costs of action pursuant to 15 USC § 1117 (a),

c) prejudgment interest,

d) treble damages pursuant to 15 USC § 1117 (a),

e) a finding that this case is exceptional and an award of reasonable attorney fees pursuant to 15 USC § 1117 (a).

## THIRD CLAIM FOR RELIEF

### Plaintiff El Tapatio vs. Defendants Enova and Del La Torre, Jr.

### (Misappropriation of Trade Secrets 18 U.S.C. §§ 1836(b)(1))

61. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 60 as if fully alleged herein.

62. While employed by Vitali, Del La Torre, Jr. obtained access to El Tapatio's Trade Secrets, including customer information and supplier information.

63. The El Tapatio Trade Secrets obtained by Del La Torre, Jr. are related to El Tapatio's products that are used in or intended for use in, interstate commerce. As stated above, El Tapatio sells its products throughout the United States and the trade secrets obtained by Del La Torre, Jr. relate to a substantial number of these customers and products.

64. El Tapatio considers these items to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

65. Defendants Enova and Del La Torre, Jr. have utilized and are continuing to utilize El Tapatio's confidential, proprietary Trade Secrets to solicit El Tapatio's existing and prospective customers and manufacture and distribute infringing PIÑASLIM products. In doing so, Defendants Enova and Del La Torre, Jr. are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with El Tapatio.

66. As a result of Defendants Enova and Del La Torre, Jr.'s misappropriation and use of the El Tapatio Trade Secrets, Defendants Enova and De La Torre, Jr. have violated the Defend Trade Secrets act of 2016 (18 U.S.C. § 1836(b)(1)).

67. As a direct and proximate result of the violation of the Defend Trade Secrets Act of 2016, El Tapatio has sustained substantial damages in an amount that will be established at trial of this matter.

68. Defendants' Enova and Del La Torre, Jr. actions in converting and misappropriating El Tapatio's Trade Secrets for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of El Tapatio.

69. Defendants' Enova and Del La Torre, Jr. actions have caused and will continue to cause El Tapatio irreparable harm if not preliminarily and permanently enjoined.

70. El Tapatio has no adequate remedy at law.

**WHEREFORE,** El Tapatio demands judgment against Defendants Enova and Del La Torre, Jr. for injunctive relief, damages for the misappropriation, and an award for unjust enrichment caused by the misappropriation, but not less than a reasonable royalty, exemplary damages, prejudgment interest, an award of costs and reasonable attorneys' fees, all pursuant to 18 U.S.C. § 1836(b)(3), and such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**Plaintiff El Tapatio vs. Defendants Enova and Del La Torre, Jr.**

**(Misappropriation of Trade Secrets Under Illinois Trade Secrets Act)**

71. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 70 as if fully alleged herein.

72. While employed by Vitali, Del La Torre, Jr. obtained access to El Tapatio's confidential Trade Secrets, including customer information and supplier information.

73. El Tapatio considers these items to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information

74. Defendants Enova and Del La Torre, Jr. have utilized and are continuing to utilize El Tapatio's confidential, proprietary Trade Secrets to solicit El Tapatio's existing and prospective customers and manufacture and distribute infringing PIÑASLIM products. In doing so, Defendants Enova and Del La Torre, Jr. are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with El Tapatio.

75. As a result of Defendants' Enova and Del La Torre, Jr. misappropriation and use of the El Tapatio Trade Secrets, Defendants Enova and Del La Torre, Jr. have violated Illinois Compiled Statutes 765 ILCS 1065, Illinois Trade Secrets Act.

76. As a direct and proximate result of Defendants' Enova and Del La Torre, Jr. violation of Illinois Trade Secrets Act, El Tapatio has sustained substantial damages in an amount that will be established at trial of this matter.

77. Defendants' Enova and Del La Torre, Jr. actions in converting and misappropriating El Tapatio's confidential, proprietary and trade secret information for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of El Tapatio.

78. Defendants' Enova and Del La Torre, Jr. actions have caused and will continue to cause El Tapatio irreparable harm if not preliminarily and permanently enjoined.

79. El Tapatio has not adequate remedy at law.

**WHEREFORE**, El Tapatio demands judgment against Defendants Enova and Del La Torre, Jr. for injunctive relief, damages for the misappropriation, and an award for unjust enrichment caused by the misappropriation, but not less than a reasonable royalty, exemplary damages, prejudgment interest, an award of costs and reasonable attorneys' fees, all pursuant to Illinois Compiled Statutes 765 ILCS 1065, and such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

**Plaintiff Vitali vs. Defendants Enova and Del La Torre, Jr.**

**(Misappropriation of Trade Secrets 18 U.S.C. §§ 1836(b)(1))**

80. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79 as if fully alleged herein.

81. While employed by Vitali, Del La Torre, Jr. obtained access to Vitali's Trade Secrets, including customer information, supplier information and formulas.

82. The Vitali Trade Secrets obtained by Del La Torres, Jr. are related to Vitali's products that are used in or intended for use in, interstate commerce. As stated above, Vitali sells

its products throughout the United States and the Vitali Trade Secrets obtained by Del La Torre, Jr. relate to a substantial number of these customers and products.

83. Vitali considers these items to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

84. Defendants Enova and Del La Torre, Jr. have utilized and are continuing to utilize the Vitali Trade Secrets to solicit Vitali's existing and prospective customers, and manufacture counterfeit NUMIA products. In doing so, Defendants Enova and Del La Torre, Jr. are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with Vitali.

85. As a result of Defendants Enova and Del La Torre, Jr.'s misappropriation and use of the confidential, proprietary and trade secret information, Defendants Enova and Del La Torre, Jr. have violated the Defend Trade Secrets act of 2016 (18 U.S.C. § 1836(b)(1)).

86. As a direct and proximate result of the violation of the Defend Trade Secrets Act of 2016, Vitali has sustained substantial damages in an amount that will be established at trial of this matter.

87. Defendants' Enova and Del La Torre, Jr. actions in converting and misappropriating Vitali's Trade Secrets for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of Vitali.

88. Defendants' Enova and Del La Torre, Jr. actions have caused and will continue to cause Vitali irreparable harm if not preliminarily and permanently enjoined.

89. Vitali has no adequate remedy at law.

**WHEREFORE,** Vitali demands judgment against Defendants Enova and Del La Torre, Jr. for injunctive relief, damages for the misappropriation, and an award for unjust enrichment caused by the misappropriation, but not less than a reasonable royalty, exemplary damages, prejudgment interest, an award of costs and reasonable attorneys' fees, all pursuant to 18 U.S.C. § 1836(b)(3), and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Plaintiff Vitali vs. Defendants Enova and Del La Torre, Jr.

### (Misappropriation of Trade Secrets Under Illinois Trade Secrets Act)

90. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89 as if fully alleged herein.

91. While employed by Vitali, Del La Torre, Jr. obtained access to Vitali's confidential Trade Secrets, including customer information, supplier information and formulas.

92. Vitali considers these items to be confidential and proprietary Trade Secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

93. Defendants Enova and Del La Torre, Jr. have utilized and are continuing to utilize the Vitali Trade Secrets to solicit Vitali's existing and prospective customers, and manufacture counterfeit NUMIA products. In doing so, Defendants Enova and Del La Torre, Jr. are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with Vitali.

94. As a result of Defendants' Enova and Del La Torre, Jr. misappropriation and use of the confidential, proprietary and trade secret information, Defendants Enova and Del La Torre, Jr. have violated Illinois Compiled Statutes 765 ILCS 1065, Illinois Trade Secrets Act.

95. As a direct and proximate result of Defendants' Enova and Del La Torre, Jr. violation of Illinois Trade Secrets Act, Vitali has sustained substantial damages in an amount that will be established at trial of this matter.

96. Defendants' Enova and Del La Torre, Jr. actions in converting and misappropriating Vitali's confidential, proprietary and trade secret information for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of Vitali.

97. Defendants' Enova and Del La Torre, Jr. actions have caused and will continue to cause Vitali irreparable harm if not preliminarily and permanently enjoined.

98. Vitali has not adequate remedy at law.

**WHEREFORE**, Vitali demands judgment against Defendants Enova and Del La Torre, Jr. for permanent injunctive relief, damages for the misappropriation, and an award for unjust enrichment caused by the misappropriation, but not less than a reasonable royalty, exemplary damages, prejudgment interest, an award of costs and reasonable attorneys' fees, all pursuant to Illinois Compiled Statutes 765 ILCS 1065, and such other relief as the Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF

### Plaintiff Vitali vs. Defendant Del La Torre, Jr.

### (Breach of Fiduciary Duty)

99. Plaintiffs repeat and allege the allegations set forth in paragraphs 1 through 98 above, as if set forth fully herein.

100. At all relevant times, Del La Torre, Jr. owed Vitali a fiduciary duty to be honest and loyal in his dealings with and for Vitali.

101. Del La Torre, Jr. breached his fiduciary duties to Vitali by, *inter alia*, forming Enova and misappropriating the trade secrets of Vitali and Vitali's customer El Tapatio, infringing the trademarks and intellectual property rights of El Tapatio and Vitali, and diverting the trade of Vitali to himself.

102. Vitali has been injured by Del La Torre, Jr.'s breach of fiduciary duties.

103. Del La Torre, Jr.'s wrongful acts were intentional and malicious, warranting an award of punitive damages.

**WHEREFORE**, Vitali demands judgment against Del La Torre, Jr. for compensatory and punitive damages, prejudgment interest, costs and such other relief as the Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

### All Plaintiffs vs. All Defendants

### (Unfair Competition and False Designation of Origin 15 U.S.C.§ 1125(a))

104. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 103 above, as if set forth fully herein.

105. Defendants' use of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design marks without the authorization of Plaintiffs is likely to deceive and cause confusion, mistake and deception among consumers or potential consumers as to the source, origin, sponsorship, or approval of Defendants' goods.

106. Defendants' use of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design marks without the authorization of Plaintiffs is likely to deceive and cause confusion, mistake and deception as to the affiliation, connection, or association of Defendants and Defendants' goods with Plaintiffs and Plaintiffs' goods.

107. Such confusion, deception and mistake has occurred as a direct result of Defendants' use of the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design marks in connection with the distribution and sale of dietary supplements.

108. Despite the fact that Defendants have knowledge of Plaintiffs' rights Defendants have used, and upon information and belief, will continue to use the PIÑASLIM, Dancer Design, NUMIA and Tape Measure Design marks in complete disregard of Plaintiffs' rights.

109. On information and belief, the wrongful acts of Defendants alleged above were committed willfully with full knowledge of Plaintiffs' rights and with the intention of deceiving and misleading the public.

110. Defendants' infringing activities will continue to cause irreparable injury to Plaintiffs if Defendants are not restrained by the Court from further violation of Plaintiffs' rights.

111. As a direct and proximate result of Defendants' unlawful infringement, Plaintiffs have suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial. Plaintiffs are entitled to all available relief provided for in 15 U.S.C. § 1117, 1118 and 1125 including preliminary and permanent injunctive relief, Defendant's profits, treble damages, costs and attorneys' fees.

**WHEREFORE**, El Tapatio demands judgement against each of the Defendants for injunctive relief, an award of Defendants' profits, damages sustained by El Tapatio and the costs

of action, prejudgment interest, treble damages, and an award of reasonable attorney fees, all pursuant to 15 USC §§ 1116(a) and 1117 (a).

**NINTH CLAIM FOR RELIEF**

**All Plaintiffs vs. All Defendants**

**(Violation of Illinois Uniform Deceptive Trade Practices Act)**

112. Plaintiffs hereby repeat and re-allege the allegations set forth in paragraphs 1 through 111 above, as if set forth fully herein.

113. Defendants' appropriation, adoption and use of the PIÑASLIM, NUMIA and Tape Measure Design marks on or in connection with the distribution and sale of dietary supplements is likely to confuse or mislead consumers into believing that Defendants' goods are sponsored, affiliated, or approved by Plaintiffs, thus constituting a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

114. On information and belief, the deceptive, unfair, and fraudulent practices set forth above have been undertaken with knowledge by Defendants willfully with the intention of causing harm to Plaintiffs and for the calculated purpose of misappropriating Plaintiffs' goodwill and business reputation.

115. Defendants' use of the PIÑASLIM, NUMIA and Tape Measure Design marks has deprived Plaintiffs of the opportunity to conduct business using its trademarks and deprived Plaintiffs of the right to control the use of its trademarks.

116. As a direct and proximate result of Defendants' unlawful infringement, Plaintiffs have suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial. Plaintiffs are entitled to all available relief provided for

in the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. including permanent injunctive relief.

117. On information and belief, Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with intent to injure Plaintiffs in its business and with conscious disregard for Plaintiffs' rights, thereby justifying awards of punitive and exemplary damages in amounts sufficient to punish and to set an example for others.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for injunctive relief, costs and attorneys' fees under 815 ILCS § 51013 and such other relief as the Court deems just and proper.

**<u>TENTH CLAIM FOR RELIEF</u>**

**All Plaintiffs vs. All Defendants**

**(Common Law Unfair Competition)**

118. Plaintiffs hereby repeat and re-allege the allegations set forth in paragraphs 1 through 117, above, as if set forth fully herein.

119. Defendants acts in using Plaintiffs' trademarks and misappropriating Plaintiffs' Trade Secrets are likely to cause public confusion, mistake and deception, and constitute unfair competition in violation of the common laws in the State of Illinois.

120. On information and belief, the wrongful acts of Defendants alleged above were committed willfully with full knowledge of Plaintiffs' intellectual property rights and with the intention of deceiving and misleading the public.

121. Defendants' infringing activities will continue to cause irreparable injury to Plaintiffs if Defendants are not restrained by the Court from further violation of Plaintiffs' rights.

As a direct and proximate result of Defendants' unlawful infringement, Plaintiffs have suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, injunctive relief, costs, and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demands a trial by jury of all issues so triable.

Dated this 7th day of December 2016.

Respectfully submitted,

/s/ Paul G. Juettner
Paul G. Juettner
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
pjuettner@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*